METROPOLITAN SAVINGS AND LOAN ASSOCIATION et al., Appellants,

v.

W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellees.

No. 12298.

Court of Civil Appeals of Texas, Austin.

March 17, 1976.

Rehearing Denied April 7, 1976.

Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellants.

John L. Hill, Atty. Gen. of Tex., Thomas M. Pollan, Asst. Atty. Gen., Austin, for W. Sale Lewis, Sav. and Loan Commissioner of Texas.

John J. McKay, McKay & Wash, Austin, for Gregg County Sav. and Loan Ass'n.

O'QUINN, Justice.

The prior opinion of this Court filed November 19, 1975, is withdrawn and the following opinion is filed in lieu thereof.

The Savings and Loan Commissioner of Texas, after hearings in September and November of 1973, entered an order in January of 1974 approving an application for a charter to establish the fourth savings and loan association in Longview, and the sixth charter for Gregg County.

Three established savings and loan associations in Gregg County, opposing the application before the Commissioner, appealed to district court in Travis County. The trial court, in November of 1974, entered judgment affirming the order of the Commissioner.

Appellants are Metropolitan Savings and Loan Association, Kilgore Savings and Loan Association, and Longview Savings and Loan Association, institutions opposing the application for the proposed Gregg County Savings and Loan Association.

Appellants bring four points of error under which three principal attacks are made on the order of the Commissioner. In the main appellants claim relevant and admissible evidence was excluded and that incompetent evidence was admitted; also that the order is not reasonably supported by substantial evidence. Appellants further urge that the order is not in compliance with Section 11.11(4) of Article 852a, V.A.T.S., requiring that findings of fact in the order be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

We will reverse the judgment of the trial court and remand the proceeding to the Commissioner.

Hearings were conducted for the Commissioner by a hearing officer whose rulings on admissibility of evidence are under attack by appellants. Applicants for the charter relied significantly on the testimony of Dr. Robert Branson of Bryan, and this reliance is evidenced by the extent to which the order of the Commissioner reviews the witness' testimony.

In qualifying Dr. Branson as an expert, in order that his opinions and conclusions might be offered, it was shown that the witness had testified in an earlier and separate hearing in which he employed certain tests and ratios to measure the performance of existing associations, thereby to test the need for a new association in the same area. In that hearing the witness had undertaken to demonstrate the need for a new association in a given county by relating that county to other comparable counties in Texas. These tests by Dr. Branson included Gregg County as comparable to the subject county.

A series of tables developed by Dr. Branson in the earlier hearing, in which he had compared Gregg County to the subject county, was offered by appellants and, over objection, was admitted by the hearing officer. This evidence, termed Exhibit 3, demonstrated effectively the methodology applied by Dr. Branson in using at least three ratios. *Ratio One* related to "buying income per association," under which need for a new association might be found if the associations in the subject county should have *higher* "buying income per association" than found in the counties compared. *Ratio Two* concerned "savings and loan assets per capita," and under this test need for a new association might be found if the

institutions of the subject county had the *lowest* asset per capita figure. *Ratio Three* was termed "buying income to savings and loan assets," and under this test the subject county might need a new association if existing associations in the subject county had the *highest* ratio of income to assets, when compared with the other counties.

With the tables previously developed by Dr. Branson before the hearing officer, appellants then sought to introduce through Dr. James R. Vinson, an expert witness for appellants, the results found when Dr. Branson's ratios were applied to economic conditions, existing at the time of the hearing, in Gregg County and the counties compared with Gregg County. The hearing officer excluded this evidence, termed Exhibit 34.

In summary, the evidence found in Exhibit 34 demonstrated that under the ratios and tests developed and approved by Dr. Branson, when used by Dr. Vinson to test the need for a new association in Gregg County, an additional association in Gregg County could not be justified by any one of the three ratio tests.

The record reflects that Exhibit 3 was admitted for the purpose of showing "whatever the procedure . . . [Dr. Branson] may have used in the past to compute what he felt were necessary elements of the charter application." At the hearing Dr. Branson conceded that the factors found in Exhibit 3 were still relevant to the Commissioner's consideration of the application. But current information, prepared by Dr. Vinson for appellants, which tracked Dr. Branson's methodology found in Exhibit 3, and applied it to the application under consideration, was excluded when Exhibit 34 was rejected by the hearing officer and excluded from consideration by the Commissioner.

The exclusion of Dr. Vinson's evidence in Exhibit 34 precluded the Commissioner's consideration of evidence showing that in accord with methods employed by Dr. Branson no need for an additional savings and loan association in Gregg County had been demonstrated.

■ The Savings and Loan Act, as well as the Rules and Regulations adopted by the Savings and Loan Section of the Finance Commission, require that interested parties shall be accorded opportunity to present evidence and argument on all issues and that the Commissioner make his determination on all pertinent information. (Sec. 11.11(2), Art. 852a, V.A.T.S.; Rules & Regulations, sec. 1.8). The evidence excluded was relevant to the ultimate determination to be made by the Commissioner. In refusing its admission, the hearing officer denied appellants a basic right and withheld from the Commissioner matters proper and essential to performance of his statutory duty.

Other and additional erroneous rulings were made by the hearing officer, both in excluding evidence that should have been admitted and in admitting evidence that was incompetent. In general, it may be stated that the hearing officer established a fairly consistent pattern of admitting any evidence, whether competent or not, if it tended to support the application, but with equal consistency excluded relevant evidence in rebuttal, or tending to show no need in Gregg County for an additional association, even when such evidence was competent. The exclusion of the proper testimony tendered by appellants is sufficient basis to void the Commissioner's order.

One example of the hearing officer's conduct is found in the exclusion of an exhibit prepared by Dr. Vinson based in part upon information obtained by him from an association in Gladewater. The exhibit was admissible as part of Dr. Vinson's study, but was excluded on objection that it was hearsay. This was error. *Lewis v. Southmore Savings Association,* 480 S.W.2d 180 (Tex. Sup.1972). Yet the hearing officer admitted into evidence information gathered by Dr. Branson from a pamphlet containing data "gathered from diverse sources," concerning which the authors or publishers warned, "Accuracy cannot be guaranteed . . . to all entries." Grounds for admitting the pamphlet, as stated by the hearing officer, was ". . . the ex-

pert's testimony may be based upon whatever sources he wish to deem [sic] . ..." On examination, Dr. Branson admitted the information was not reliable.

Appellants present other points of error, directed in the main to defects in the order of the Commissioner. Attack is made on the order because of its reliance on recitations of non-comparable data, used to show the need for a new association, and inclusion of erroneous data not found in the evidence. For example, the order compares savings increases between the two existing Gregg County associations as compared to the increases statewide. However, in doing so, the Commissioner compared the savings increases of the statewide associations for a *nine month* period with the increases of the local associations for a *ten month* period. Obviously, figures derived from different time periods would present a distorted picture of the relative economic changes.

Another example of erroneous comparisons of data in the Commissioner's order is the comparison of the percentage of deed of trust recordings held by savings and loan associations in Gregg County as opposed to the percentage held by associations nationwide. The national figures include sales and assignments of loans but the local figures do not. Again, this renders the comparison without meaning because different factors are included in each group of figures. Further, there was no evidence that a comparison of national averages with Gregg County would show a need for an additional association in Gregg County. Yet the Commissioner's order dismisses certain presentations of national averages by the protestant on the ground that they are "not comparable." But the order itself relies upon similar comparisons of non-comparable data presented by the charter applicant.

The Commissioner's order also recites data that is misleading or erroneous in support of the findings. The order states that there is a need for a new association because existing associations make no FHA or VA loans, whereas the applicant proposes to do so. In support of this finding the Com-

missioner relies upon testimony by one local realtor who "has had to" turn his clients FHA business to mortgage companies. The clear implication from this testimony is that the existing associations refuse to make FHA loans. The realtor's reason, however, for referring FHA loans to mortgage companies seems to be a matter of personal preference, rather than necessity, since he has a mortgage lender as a tenant. There was no showing that of the other 250 realtors in Longview any other realtor had to seek FHA loans elsewhere. In fact, the evidence shows that First Federal Savings and Loan does make home loans.

Another material distortion is evident in the order in which it is stated that an existing association charges "three points" on FHA loans, whereas applicants propose to charge only "one point." The order fails to make clear that the "three points" referred to are "discount" points, which are essentially different from an "origination" point. The record further shows that Kilgore Savings and Loan does not charge any points on its conventional loans.

The Commissioner's order recites that 6.33% of personal income in Gregg County flowed to savings and loan savings, whereas, for the state, the flow was 3.47%. The percentages used by the Commissioner are inaccurate because the 6.33% figure was derived from a formula which included savings from areas *outside* Gregg County (which savings amounted to 10–15 percent of their business).

■ We have examined the record with care and conclude that the errors committed during the hearing clearly show an abuse of discretion by the Commissioner. Furthermore, the order fails to set forth substantial evidence to support the Commissioner's finding. Nor does the order include findings of fact and conclusions of law on all issues material to the decision reached, in violation of Article 11.11(4) of the Savings and Loan Act.

The judgment of the trial court is reversed, and the proceeding is remanded to the Commissioner with instructions to deny the charter application.

Reversed and remanded with instructions.