W. Sale LEWIS, Savings and Loan Commissioner, et al., Petitioners,

v.

METROPOLITAN SAVINGS AND LOAN ASSOCIATION et al., Respondents.

No. B–5998.

Supreme Court of Texas.

March 9, 1977.

Rehearing Denied May 25, 1977.

**12**

John L. Hill, Atty. Gen., Tom M. Pollan, Asst. Atty. Gen., McKay & Wash, John J. McKay, Austin, Kenley, Boyland, Haw- thorn, Starr & Coghlan, Herbert Boyland, Longview, for petitioners.

Heath, Davis & McCalla, Dudley D. McCalla, Austin, for respondents.

STEAKLEY, Justice.

This is an appeal from an order of the Savings and Loan Commissioner approving a charter for an additional savings and loan association in Longview, Gregg County, Texas. See Tex.Rev.Civ.Stat.Ann. art. 852a. The applicant, to be known as the Gregg County Savings and Loan Associa- tion, is a petitioner here. The application was opposed by three existing savings and loan associations in Gregg County, known as Metropolitan Savings and Loan Associa- tion, Kilgore Savings and Loan Association, and Longview Savings and Loan Associa- tion. The trial court sustained the approval order of the Commissioner, also a petitioner here, but this judgment was reversed by the Court of Civil Appeals and the proceeding was remanded to the Commissioner with instructions to deny the charter application. 535 S.W.2d 35. We modify the judgment of the Court of Civil Appeals to the extent of instructing the Commissioner to proceed in accordance with this opinion.

■ The Court of Civil Appeals deter- mined that the contestants, respondents here, were denied due process by the hear- ing examiner in his exclusion from the ad- ministrative record of competent and mate- rial evidence proffered by the contestants.[1] We granted writ of error to resolve the question of whether an approval order of the Savings and Loan Commission is invalid for arbitrariness when the contesting par- ties are denied due process of law in the conduct of the administrative hearing, not- withstanding that under the record as made, the order may be said to have reason- able factual support under the precepts of the substantial evidence rule. We now an- swer this question in the affirmative.

---

1. The Court of Civil Appeals also ruled that the fact findings of the Commissioner were not in compliance with the requirements of § 11.11(4) of Article 852a; and, further, that the approval order is not reasonably supported by substan- tial evidence. We do not reach either of these questions under our disposition of the appeal.

It is the basic contention of the Attorney General on behalf of the Commissioner, and of counsel for the applicant association, that the only test to be considered by the courts in determining the issue of arbitrariness vel non of an approval order of the Savings and Loan Commissioner is whether the order is supported by substantial evidence. The argument in effect is that a denial of due process in the administrative hearing becomes immaterial and beside the point if the order can be said to have reasonable evidentiary support in the administrative record.

▉ Broadly speaking, the substantial evidence rule is a court review device to keep the courts out of the business of administering regulatory statutes enacted by the Legislature; but it remains the business of the courts to see that justice is administered to competing parties by governmental agencies. As stated by Professor Davis in his Administrative Law Treatise, Vol. 4, § 29.01: "Although the scope of judicial review of administrative action ranges from zero to one hundred per cent, that is, from complete unreviewability to complete substitution of judicial judgment on all questions, the dominant tendency in both state courts and federal courts is toward the middle position known as the substantial-evidence rule. Under this rule, the court decides questions of law but it limits itself to the test of reasonableness in reviewing findings of fact. Broadly, questions of law include not only common law, statutory interpretation, and constitutional law, but also questions of administrative jurisdiction, of fair administrative procedure, and of protection against arbitrary or capricious action or abuse of discretion."

▉ In Texas, the substantial evidence rule had its origin in appeals from orders of administrative agencies under statutes requiring de novo review in court. In this type of appeal the evidence is heard anew by the court and the conduct of the administrative hearing, and the evidence heard by the agency, are of secondary, if any, importance. *Trapp v. Shell Oil Company,* 145 Tex. 323, 198 S.W.2d 424 (1946); *Cook Drill-*

*ing Company v. Gulf Oil Corporation,* 139 Tex. 80, 161 S.W.2d 1035 (1942); *Shupee v. Railroad Commission of Texas,* 123 Tex. 521, 73 S.W.2d 505 (1934). In practical result, it has not taken much evidence under our decisions to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way. Cf. *Gerst v. Goldsbury,* 434 S.W.2d 665 (Tex.1968). Moreover, most contested administrative decisions are made in the context of disputed facts with evidence of a substantial nature on both sides. Even so, the proceedings of an administrative agency must meet the requirements of due process of law. *Miller v. Railroad Commission,* 363 S.W.2d 244 (Tex.1962); *Railroad Commission v. Alamo Express,* 158 Tex. 68, 308 S.W.2d 843 (1958); *Francisco v. Board of Dental Examiners,* 149 S.W.2d 619 (Tex.Civ. App.1941, error ref'd).

▉ We recognized in *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966) that Article 852a § 11.12, relating to judicial review of an order of the Savings and Loan Commissioner, does not provide for the application of the test or procedures usually employed in determining the validity of an administrative order; and further, that a hearing before a hearing officer of the Savings and Loan Commissioner is a different proceeding from the informal hearing considered by this Court in *Cook Drilling Company v. Gulf Oil Corporation, supra.* We also said that the effect of Article 852a was to adopt the rule that the Commissioner's order is to stand or fall upon the evidence adduced and matters noticed at the Commissioner's hearing and not upon evidence originally produced at a subsequent trial de novo in court. However, the method of review, i. e., under the substantial evidence rule, is unchanged. *Gerst v. Oak Cliff Savings and Loan Association,* 432 S.W.2d 702 (Tex. 1968). What occurs, then, at the administrative hearing becomes of paramount importance in the statutory procedures established by Article 852a. If there is evidence in an administrative record that can be said to qualify as substantial, the parties may yet have been denied due process and the rudiments of fair play in the conduct of the

administrative hearing that produced the record upon which the agency acted. See Reavley, *Substantial Evidence and Insubstantial Review in Texas*, 23 S.W.L.J. 239 (1969); Berger, *Administrative Arbitrariness and Judicial Review*, 65 Colum.L.Rev. 55 (1965); Jaffe, *The Right to Judicial Review*, 71 Harv.L.Rev. 401 (1958).

■ As indicated earlier, our primary concern in granting writ of error was whether the parties opposing the charter application were denied due process by rulings of the hearing examiner that excluded competent and material evidence from the administrative record, thus precluding its consideration by the Commissioner in his decision process. This is particularly represented by the exclusion from the record of what is identified as Contestant's Exhibit 34, and for the reasons now to be stated we hold that the opposing parties were denied due process by this ruling.

The case of the applicant for a charter to establish a fourth savings and loan association in Longview, Gregg County, Texas, rested principally upon the testimony of Dr. Robert Branson of Bryan, Texas, as an economic-expert witness. It is evident from the approval order of the Commissioner that he was greatly influenced by the testimony of this witness in reaching his decision favorable to the application. It was shown that Dr. Branson had supported similar applications in prior proceedings and that in his testimony he had employed certain tests or standards in reaching his expert opinion regarding the need for additional savings and loan facilities. The methodology employed by Dr. Branson was demonstrated in Contestant's Exhibit 3 which was admitted into evidence by the hearing examiner for the purpose of showing "the procedure this expert witness has used in the past." Exhibit 3 contained a series of tables or ratios prepared by Dr. Branson in an earlier study in support of his testimony in a prior proceeding. Gregg County was utilized in this study as a comparable county.

The evidence identified as Contestant's Exhibit 34 was prepared by Dr. James R. Vinson, an expert witness for the contesting parties. The Exhibit was predicated upon the methodology of Dr. Branson as exhibited in Exhibit 3, with the economic information updated with respect to Gregg County, Texas. This information was displayed in the manner previously used by Dr. Branson and Exhibit 34 demonstrated that on the basis of the update, Gregg County, Texas was at the opposite end of the scale from the tests or standards previously utilized by Dr. Branson. This witness had previously found a need for a new association in the fact that the existing associations had a high buying income per association, whereas Gregg County was shown to have the lowest buying income per association. Similarly, Dr. Branson had previously found a need for a new association because of a low assets per capita figure, whereas Gregg County was shown to have the highest assets per capita. Finally, Dr. Branson had previously found need because of a high ratio of income to assets, whereas Gregg County was shown to have the lowest ratio of income to assets.

In our view, the evidence reflected in Exhibit 34 was clearly competent and relevant and the error in its exclusion required the reversal by the Court of Civil Appeals of the judgment of the trial court and the remand of the proceeding to the Commissioner. From our study of the record we do not consider that Exhibit 34 was offered by the Contestants for the purpose of establishing a norm or standard, or criterion, as argued by petitioners. Nor do we regard the evidence as cumulative even if, as asserted by petitioners without record references, "all of the facts in Exhibit 34 pertaining to Gregg County were in evidence before the Commissioner." It is apparent to us that these arguments misconceive the evidentiary function and effect of Exhibit 34. The evidence in the Exhibit was proffered for the purpose of impeaching the testimony of Dr. Branson and might well have been viewed by the Commissioner as doing so. In such purpose and effect, the evidence also tended to weaken the evidentiary support for an additional savings and

loan association in Gregg County, Texas. Of course, we cannot determine what influence this excluded evidence might have had upon the Commissioner in his decision process. At the least, its exclusion may have affected the result, and in fairness to the opposing parties the Commissioner should have had such evidence before him. Moreover, this comports with the statutory directive of § 11.11(2) of Article 852a that "[O]pportunity shall be afforded any interested party to respond and present evidence and argument on all issues involved in any hearing held under any provision of this Act."

Professor Cooper in his treatise on state administrative law draws these conclusions:

The exclusion of proper evidence may vitiate the agency's decision, if it appears that its exclusion may have affected the result. State courts agree with decisions in the federal courts that refusal to receive competent and material evidence may be a denial of due process. The requirement that proper evidence be received is a necessary counterpart of the rule that the agency must give due weight to all the evidence before it; refusal to consider proper evidence which has been duly proffered falls within the condemnation that voids arbitrary administrative action.

If it appears that the excluded evidence could not materially have affected the outcome of the case—if a remand to receive and consider the evidence improperly excluded would amount to nothing more than "a postponement of the inevitable," the error committed is not prejudicial. But normally it is impossible for a reviewing court to be assured that the outcome could not have been affected by the consideration of the excluded testimony, and in the usual case the necessary result of the exclusion of proper testimony is to void the administrative order. Cooper, *State Administrative Law*, Vol. I (1965) pp. 403, 404.

The governing rule was stated in *Donnelly Garment Co. v. NLRB*, 123 F.2d 215 (8th Cir. 1941), and restated with approval in *NLRB v. Burns*, 207 F.2d 434 (8th Cir. 1953), as follows:

"That a refusal by an administrative agency such as the National Labor Relations Board to receive and consider competent and material evidence offered by a party to a proceeding before it, amounts to a denial of due process is not open to debate. * * * That the Board would or might have reached no different conclusion had the rejected evidence been received, is entirely beside the point. The truth is that a controversy tried before a court or before an administrative agency is not ripe for decision until all competent and material evidence proffered by the parties has been received and considered. · · ·"

■ In the eyes of the law there is no hearing unless a fair opportunity is afforded the parties to prove their case before an administrative agency. *People ex rel. Hirschberg v. Board of Supervisors*, 251 N.Y. 156, 167 N.E. 204, 211 (1929). See also *Gallant's Case*, 326 Mass. 507, 95 N.E.2d 536 (1950); *Prince v. Industrial Comm'n*, 89 Ariz. 314, 361 P.2d 929 (1961).

■ The decision of the Savings and Loan Commissioner is not governed by the precepts of the substantial evidence rule, and his responsibility is not one of determining if a particular result will be supportable by application of the rule to the administrative record. To the contrary, the decision of the Commissioner is to be in the public interest after full consideration of all the surrounding facts and circumstances, and in fairness and justice to the competing parties. Essential to the discharge of this responsibility is an administrative record that presents the relevant and material facts, and a determination by the courts of whether a particular administrative record fairly does so requires an examination of the whole record. Article 852a does not establish a self-contained administrative process unreviewable by the courts for arbitrariness if the administrative record, *no matter how it came about*, can be said to contain substantial evidence in support of the ultimate action of the Commissioner.

▰ This is not to say that an order of the Commissioner is always insecure in court if the hearing examiner has made mistakes in the admission or exclusion of evidence, or in other respects. Nor is it to say that a hearing examiner, who may or may not be trained or experienced in the law, must measure up to judicial standards in the conduct of an administrative hearing.[2] But it is to say, as we said in *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1966) that arbitrary action of an administrative agency cannot stand. There is arbitrariness where the treatment accorded parties in the administrative process denies them due process of law. While we recognized in *Gerst v. Nixon* that the test generally applied by the courts in determining the issue of arbitrariness is whether or not the administrative order is reasonably supported by substantial evidence, we made clear in the original opinion and again on Motion for Rehearing that the record there did not present a question of procedural due process.

The judgment of the Court of Civil Appeals is modified so as to remand this proceeding to the Savings and Loan Commissioner for further proceedings consistent with this opinion; and as so modified, the judgment of the Court of Civil Appeals is affirmed. This modification will permit the Commissioner to order a reopening of the hearings and thereafter to reconsider his decision. See Article 852a § 11.12(6) and *First Savings & Loan Ass'n of Del Rio, Texas v. Lewis*, 512 S.W.2d 62 (Tex.Civ. App.1974, writ ref'd n.r.e.).

McGEE, J., dissents in an opinion in which GREENHILL, C. J., and DENTON, J., join.

2. Much has been written about the problem of judicializing administrative procedures. See Friendly, "Some Kind of Hearing," 123 Pa.L. Rev. 1267 (1975); and the analysis by Professor Davis of the "residuum rule" that requires a reviewing court to set aside an administrative finding unless the finding is supported by evidence which would be admissible in a jury trial. Davis, Administrative Law Treatise, Vol. II, § 14.10 (1958). But see *People v. Board of Supervisors*, 251 N.Y. 156, 167 N.E. 204, 207

McGEE, Justice, dissenting.

I respectfully dissent.

I read the majority opinion to hold that the contestants in this case, respondents herein, were denied due process of law, primarily because of the exclusion of contestants' Exhibit 34, regardless of the fact that the Commissioner's order is supported by substantial evidence.

I disagree with the majority opinion in its holding that the exclusion of Exhibit 34 was a violation of due process. There are situations where the wrongful actions of the hearing officer would be so detrimental to the presentation of a party's position that it would constitute a violation of due process, but the wrongful exclusion of Exhibit 34 was not the kind of error which would deny contestants due process of law. The majority states that excluding Exhibit 34 was harmful in that it could have impeached the testimony of Dr. Branson. I believe that Exhibit 34 was only cumulative of other evidence which sought to impeach Dr. Branson's testimony and its exclusion was harmless. Contestants offered Exhibit 3, a study done six years earlier by Branson which compared a different county, Bowie County, to eight other counties, one of which was Gregg County. Contestants' Exhibit 3 was admitted to show the prior methodology used by Branson and was admitted over the applicant's objection. The methodology used by Branson in the Gregg County study was substantially different than that used in the Bowie County study. Exhibit 3 had absolutely no relevance to the charter application in Gregg County. The contestants then sought to admit Exhibit 34 which used the methodology of Exhibit 3 with updated figures. Exhibit 34 was excluded by the

(1929) where it was said: "[D]ecision is intrusted to men who cannot be presumed to be learned in technical rules of law; common sense dictates the conclusion that they may not be required to apply rules which lie beyond what they may be presumed to know. Their decisions must, of course, be based upon a consideration of the relevant facts and a fair opportunity must be afforded to present to them such facts as should properly enter into their decisions."

hearing commissioner. The majority opinion states that the value of Exhibit 34 was its impeachment of Branson's testimony. Exhibit 34 could not impeach Branson as to the Gregg County study because the methodology used by Branson in the Gregg County study was different from that used in the Bowie County study. I disagree with the majority opinion which holds that the exclusion of Exhibit 34 was so harmful that it denied contestants due process of law. Remanding this case to receive and consider Exhibit 34 is nothing more than "a postponement of the inevitable." 1 Cooper, State Administrative Law, at 404 (1965).

The exclusion of Exhibit 34 was not reversible error because witnesses for contestants testified to what Exhibit 34 sought to show. The purpose for introducing Exhibit 34, other than impeachment, was to show that Gregg County was not a good location for an association because the source of savings deposits was small, there was effective participation by existing associations, and the potential for new customers was not great. Contestants' expert, Dr. Vinson, testified to the active participation and competition in the home loan business. The officers of the contestants testified that the source of savings deposits was small due to the number of associations and the competition for these loans. This could be the result sought to be shown by ratio one in Exhibit 34. The officers of the contestants and Dr. Vinson testified to the active participation by existing associations in securing deposits and in making loans. Ratio two in Exhibit 34 reflected this because Gregg County had a high ratio of savings and loan assets per capita. Ratio three of Exhibit 34 sought to show the potential for future customers by comparing the savings and loan assets with the effective buying income of Gregg County. The officers of contestants testified that the competition for customers was fierce and that there was not a great potential for new customers in Gregg County. While none of this evidence was presented in ratio form as it was in Exhibit 34, the things that Exhibit 34 sought to show were testified to and were before the Commissioner.

In *Benson v. San Antonio Savings Association*, 374 S.W.2d 423 (Tex.1963), the unsuccessful applicant alleged denial of due process because the trial court refused to allow him access to an investigative report of the Commissioner. This court held that although refusal to allow examination of the report was error, the case did not have to be remanded. The court stated:

"All of this, however, does not require a reversal and remand of this case. The investigative report, even if admissible in evidence in the trial court by reason of Art. 3731a, § 1, Vernon's Ann.Civ.Stat., is necessarily hearsay and whether favorable or unfavorable to San Antonio Association, could not serve to show that the Commissioner's rejection of the application was not supported by substantial evidence. From the record we must assume it was merely cumulative of the evidence introduced." 374 S.W.2d at 429.

*See, Lewis v. Southmore Savings Ass'n*, 480 S.W.2d 180, 184 (Tex.1972); *Gerst v. Nixon*, 411 S.W.2d 350, 357 (Tex.1966).

The holding of the majority opinion requires reversal of evidentiary errors made by hearing officers who are not required to be attorneys. The majority opinion states that not all evidentiary errors will require reversal and that the hearing examiner does not have to meet judicial standards in the conduct of a hearing. The standard which these hearing officers must meet is unannounced and the result of this opinion seems to indicate that mistakes by hearing officers will be grounds for reversal just as in a judicial proceeding. The majority's holding will cause appellate courts to review every case in which contested evidence was excluded at the hearing. I think this will result in hearing officers admitting all contested evidence due to fear of reversal. This will cause larger records of charter hearings, which are already voluminous, and raise the problem of placing incompetent evidence before the Savings and Loan Commissioner. The argument could then be asserted that reversal is required because the Commissioner considered incompetent evidence.

I would reverse the court of civil appeals and affirm the order of the Commissioner granting the Savings and Loan Association charter.

GREENHILL, C. J., and DENTON, J., join in this dissent.