**RAILROAD COMMISSION OF TEXAS, et al., Appellants,**

v.

**RIO GRANDE VALLEY GAS COMPANY, Appellee.**

No. 14164.

Court of Appeals of Texas, Austin.

Dec. 12, 1984.

Rehearing Denied Jan. 30, 1985.

Jim Mattox, Atty. Gen., Jo Campbell, Asst. Atty. Gen., B.D. St. Clair, Brook Bennett Brown, McGinnis, Lochridge & Kilgore, Austin, for appellants.

M. Frazier King, Jr., San Antonio, Rex H. White, Jr., O'Neill, Haase & White, Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

The main issue in this case (as was agreed upon by all parties in oral argument) is the meaning of Section 41(c)(1) of the Public Utility Regulatory Act (PURA) [1], which, in general, and with an exception discussed below, disallows, for the purpose of rate setting, payments made by a utility to affiliate interests. Appellee, Rio Grande Valley Gas Co., a subsidiary of Valero Energy Co., contended in the court below that the Railroad Commission acted in an arbitrary, capricious and confiscatory manner in disallowing certain evidence pertinent to Section 41(c)(1) of PURA. We point out here that direct charges and allocated charges for services based on usage from Valero Energy as well as other affiliates, were fully allowed by the Commission. It was only certain residual costs hereinafter described that Rio sought to allocate that were disallowed.

The trial court found that the Commission had acted in an arbitrary and capricious manner in excluding their costs from the rate base, vacated the order and remanded the case to the Commission to allow Rio the opportunity to fully develop the record as to the reasonableness of the method of allocation of the residual costs in contention.

We reverse the judgment of the trial court and render judgment herein, reinstating the Commission's order.

## I.

Appellants Railroad Commission and the numerous cities,[2] are before us on a welter of points. We will discuss only the questions involving the evidence excluded under Section 41(c)(1) of PURA, as appellee stated at oral argument that this was the crux of its case. We also believe these questions to be the crucial ones pertinent to a decision of this case. We are well aware that Rio launched a broadly based attack on the Commission's Final Order. In its Motion for Rehearing and Petition for Review, however, we have reviewed all of these points and find them without merit.

## II.

In enacting PURA, the Legislature placed a specific duty on the Commission to carefully scrutinize all payments made by a utility to an affiliate and to disallow all such payments unless the utility showed that the payments met certain statutory requirements. This skepticism regarding affiliate payments is expressed in Section 41(c)(1) of PURA which provides as follows:

The components of adjusted value of invested capital and net income shall be determined according to the following rules:

(a) ...

(b) ...

(c) Net Income. By 'net income' is meant the total revenues of the public utility less all reasonable and necessary expenses as determined by the regulatory authority. The regulatory authority shall determine expenses and revenues in a manner consistent with the following:

(1) Transactions with Affiliated Interests. Payment to affiliated interests for costs of any services, or any property, right or thing, or for interest expense shall not be allowed either as capital cost or as expense except to the extent that the regulatory authority shall find such payment to be reasonable. Any such finding of reasonableness shall include specific statements setting forth the cost to the affiliate of each item or class of items in question and a finding that the price to the utility is no higher than prices charged

1. Tex.Rev.Civ.Stat.Ann. art. 1446c.

2. Cities of Alamo, Alton, Brownsville, Combes, Donna, Edcouch, Edinburg, Elsa, Harlingen, Hidalgo, La Feria, Laguna Vista, La Villa, Los Fresnos, Lyford, McAllen, Mercedes, Mission, Palm Valley, Pharr, Port Isabel, Primera, Rancho Viejo, Raymondville, Rio Hondo, San Benito, San Juan, Santa Rosa, and Weslaco, Texas.

by the supplying affiliate to its other affiliates or divisions for the same item or items, or to unaffiliated persons or corporations.

The wisdom of this legislative mandate was succinctly stated by the Pennsylvania Court in *Solar Electric Co. v. Pennsylvania Public Utilities Commission*, 137 Pa. Super. 325, 9 A.2d 447 (1939), wherein it interpreted similar legislative language and held that affiliate charges should be carefully scrutinized and disallowed unless the utility shows that the services provided were necessary and reasonably priced:

> The desire of public utility management, evidenced by various methods, to secure the highest possible return to the ultimate owners is incompatible with the semi-public nature of the utility business, which the management directs. It therefore follows that the Commission should scrutinize carefully charges by affiliates, as inflated charges to the operating company may be a means to improperly increase the allowable revenue and raise the cost to the consumers of utility service as well as an unwarranted source of profit to the ultimate holding company.

*Id.* 9 A.2d at 473, 474.

Rio was simply unable or unwilling to make the required proof as to the affiliate residual charges it was allocated pursuant to the hereinafter described Massachusetts formula. These are the only affiliate charges at issue since as pointed out above, the Commission allowed the direct charges and the charges based on usage made by Rio's affiliates. Rio's entire approach has been that the Commission is required to allow the residual affiliate charges unless they are shown to be imprudent, unreasonable, or out of line. Although that may be true with respect to arms length transactions, it is not true with respect to payments to affiliates about which the Legislature has its suspicion and which to any reasonable mind are clearly tainted with the possibility of self-dealing.

In upholding the Commission's disallowance of certain affiliate charges, the New York Court said:

> When such materials and services are obtained through contracts which are the result of arm's-length bargaining in the open market, the contract price is usually accepted as the proper cost. However, when a utility and its suppliers are both owned and controlled by the same holding company, the safeguards provided by arm's-length bargaining are absent, and ever present is the danger that the utility will be charged exorbitant prices which will, by inclusion in its operating costs, become the predicate for excessive rates.

*General Telephone Co. of Upstate New York v. Lundy*, 17 N.Y.2d 373, 271 N.Y. S.2d 216, 218 N.E.2d 274, 277 (1966).

The burden was upon Rio to show that its affiliate charges were just and reasonable. PURA, § 40. In our judgment, it failed to meet its burden under Section 41(c)(1) of PURA in at least four major areas:

1. Plaintiff had the burden of showing that the prices it was charged by its affiliate were no higher than the prices charged by the supplying affiliate to its other affiliates. Plaintiff failed in this burden.

2. Plaintiff had the burden of showing that expenses which may not be allowed for rate making purposes for any reason (i.e., legislative advocacy, donations, entertainment, advertising products marketed by other subsidiaries, etc.) were not included in the "allocated expenses." Plaintiff failed to meet this burden.

3. Plaintiff had the burden of proving that each item of allocated expense was reasonable and necessary. Plaintiff failed to meet this burden.

4. Plaintiff had the burden of proving that the allocated amounts reasonably approximated the actual cost of services to it. Plaintiff failed to meet this burden.

To justify the allocation to it of its parent and other affiliates' residual charges, Plaintiff relied on what it called the "Massachusetts Formula." While that formula may have validity in some applications, it certainly has none when taken in connection with Section 41(c)(1) of PURA. At most,

the Massachusetts Formula is a reasonable allocation methodology. It does not support a finding of reasonableness that must include specific statements setting forth the reasonableness of the cost to Rio of each item or class of items in question. Moreover, it in no way bears on the question of whether the price to Plaintiff is no higher than prices charged by the supplying affiliate to other affiliates for the same item or items. Both of these requirements are set forth in plain and unambiguous language in the statute.

Among other affiliates of Valero Energy, Rio's parent, are Esco Supply Company, Corpus Christi Marine Services Co., Saber Energy, Valero Eastex Pipeline Co., and J. & R. Coal Co. The Massachusetts Formula of allocating residual administrative and general expenses as applied to Rio was not similarly applied to these other affiliates. Before November 1981, Esco and Corpus were charged for some, although not all, expenses (called expense centers by Rio) under the Massachusetts Formula Allocation. Among the expense centers not allocated to these companies was No. 398 Public Affairs. The record is silent as to why these affiliated companies should not bear their allocated portion of these expenses. In November 1981, an adjustment was made with respect to the allocated expenses to be borne by these two companies to accommodate for an arbitrarily selected management fee. No discussion of how the expenses were adjusted upward or downward or what portion of the allocated expenses the management fee was intended to cover was offered by Rio.

No residual expenses are allocated under the Massachusetts Formula to Saber Energy even though Valero owns fifty percent of that affiliate, and no adequate explanation is given as to how Saber bears its share of the allocated expenses. Indeed, it appears Saber bears none of these expenses. Saber is charged expenses using a direct charge methodology, but so is Rio, and Rio was allocated those charges. Rio failed to provide the Commission information showing that Saber carried its share of allocated costs, not to mention information by which the Commission could compare the allocated cost for services to the affiliate Saber with the cost to Rio on an item-by-item basis to be sure that Rio is not being charged higher prices than Saber is being charged. That is the mandate of the statute which Rio did not choose to follow.

Valero Eastex Pipeline Company simply is not included and bears no portion of the administrative and general costs (A & G) under the Massachusetts Formula allocation, even though it owns assets.

J. & R. Coal Co. is not allocated any of the A & G costs under the Massachusetts Formula. Instead, it is under a management fee and, as is the case with Saber Energy, Rio did not make the information available to the Commission by which it could make the mandatory finding that Rio was being charged no higher price for the items than was its sister affiliate. Although Rio has implied that these companies, through management fee or otherwise, bear some administrative and general costs on a direct usage basis, that suggested inference does not meet the mandate of the statute. Moreover, Rio failed to show that these affiliates bear any of the burden of residual corporate overhead such as expenses for Shareholder Relations, Corporate Finance, Corporate Law, Governmental Affairs, Public Affairs, Relocation Coordination, Assistant to the President, Corporate Comptroller, Corporate Planning, Corporate Budget, etc. These expenses and others are all allocated to Rio under the Massachusetts Formula, but not to the affiliates.

### III.

The foregoing discussion, a portion of Rio's activities with respect to its parent company Valero and Valero's other subsidiaries is outlined to show the burden that Rio had to carry throughout the hearing and, generally, the manner in which they chose to discharge that burden. We must also point out that there is an extensive record before us. The hearing took some five (5) days before the Commission, the

transcript of testimony is in five volumes, and there are numerous exhibits in the record.

The judgment of the trial court is quite cursory leaving the appellants in a vexatious position on appeal with respect to the court's findings and implied findings. At oral argument, appellee Rio's able attorney stated that his core argument, or the gist of his case, centered on the refusal of the Commission to admit exhibits 27, 28, 36 and 41 which were the most critical exhibits. Giving Rio every benefit of every doubt it is impossible for us to conclude other than that the Commission was correct in the exclusions.

## IV.

■ Appellee attempted to introduce into evidence exhibit 27, a document entitled "Total Distribution System Operations and Maintenance Expenses for Year 1982." The examiner excluded the exhibit as hearsay. The appellee contends the evidence was improperly excluded because the exhibit was based upon official documents from the Commission's records. However, the record reflects the documents were prepared by private individuals and simply filed with the agency. Tex.Rev.Civ.Stat. Ann. art. 3731a (Supp.1983), the provision governing official documents, is applicable only when the documents are prepared by public officials or employees under their supervision in the performance of their official duties. Consequently, exhibit 27 does not fall within this exception to the hearsay rule and therefore, was properly excluded.

■ Exhibit 28 consists of prepared rebuttal testimony of Wayne Drymala, a Rio witness. Lines 21 through 28 on page 8 and lines 1 through 5 on page 9 of the document make reference to the Federal Energy Regulatory Commission ("FERC"). This testimony included a quotation from a 1982 FERC report, statements regarding opinions issued by FERC, and a rate request of FERC. Appellee attempted to introduce these particular sections of the exhibit on the grounds that the witness was testifying from his own personal knowledge of accounting practices in the industry. The examiner correctly excluded this testimony on the basis that such testimony regarding the FERC report is hearsay. The statements were not proffered as opinions of an expert witness, but rather, as declarations of rulings promulgated by federal agencies. Additionally, the appellee did not attempt to offer the testimony in question for the limited purpose of bearing on its expert's opinion.

■ Thereafter, upon the examiner's exclusion of exhibit 28, the appellee attempted to introduce exhibit 36, a document entitled "FERC Staff Report on Interstate Gas Pipeline Ratemaking." The examiner again excluded the exhibit on the basis of hearsay. According to appellee, the exhibit should have been admitted because the document was within the realm of material of which official notice could be taken. Additionally, appellee asserts the exhibit should have been admitted on the grounds that it bears upon the opinion of the expert witness. In response to the former contention, the Commission may take judicial notice of facts within the general area of the agency's specialized knowledge. Exhibit 36, a copy of a cover page and an additional page of a report written by an unidentified author on the subject of the Massachusetts formula, is not within the Commission's specialized knowledge and therefore, judicial notice would have been improper.

Addressing the second prong of appellee's argument, the record indicates that no testimony was offered to authenticate the document nor to identify the writer of the report in order to determine his qualifications. Consequently, the exclusion of the exhibit under the hearsay rule was valid.

■ Finally, the examiner excluded from evidence on the basis of hearsay exhibit 41, a letter from Arthur Anderson & Co. to Valero Energy Co. According to appellee, this letter should have been admitted into evidence under the business records exception to the hearsay rule. Tex.Rev.Civ.Stat. Ann. art. 3737e (Supp.1983). However, the

record reflects the letter was not prepared in the regular course of business, as required by the business record exception, but rather, was specially prepared for the proceeding itself. Therefore, the examiner correctly ruled against the exhibit's admission.

■ Assuming *arguendo*, that the exhibits should have been admitted into evidence, the exclusion of such exhibits still would not have caused any prejudice to the appellee in that they did not address the issue in dispute as to whether the supplying affiliate was charging more to Rio than it was charging other affiliates. A case cited by appellee, *Lewis v. Metropolitan Savings & Loan Association*, 550 S.W.2d 11 (Tex.1977) most aptly states the law:

"... If it appears that the excluded evidence could not materially have affected the outcome of the case—if a remand to receive and consider the evidence improperly excluded would amount to nothing more than 'a postponement of the inevitable' the error committed is not prejudicial..."

### V.

In addition to the above, should the appellee be correct in its assignment of error to any of the evidentiary points discussed above, we hold that the error was harmless under Rule 434, Tex.R.Civ.P.

The judgment of the trial court is reversed and judgment herein rendered reinstating the Commission's order.