**TEXAS HEALTH ENTERPRISES, INC. d/b/a Terrace West Nursing Center, Appellant,**

v.

**TEXAS DEPARTMENT OF HEALTH, Appellee.**

**No. 03–95–00709–CV.**

Court of Appeals of Texas, Austin.

Oct. 9, 1997.

J. Stephen Dillawn, Small, Craig & Werk-enthin, Austin, for Appellant.

Dan Morales, Attorney General, Sharon L. Sanders, Assistant Attorney General, Austin, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellant Texas Health Enterprises, Inc. d/b/a Terrace West Nursing Center ("Ter-

race") sued appellee Texas Department of Health (the "Department") in district court seeking judicial review of the Department's decision to terminate Terrace's Medicaid certification. The district court rendered judgment in favor of the Department, upholding the decertification, and Terrace appealed. We originally declined to reach the merits of the appeal because the administrative record was not filed as part of the statement of facts. *Texas Health Enters., Inc. v. Texas Dep't of Health,* 925 S.W.2d 750 (Tex.App.— Austin 1996). Our decision was reversed by the Texas Supreme Court with instructions to file the administrative record and consider the merits of the case. *Texas Health Enters., Inc. v. Texas Dep't of Health,* 949 S.W.2d 313 (Tex.1997). We will affirm the district court's judgment in favor of the Department.

## BACKGROUND

Terrace, a long-term care facility in Midland, Texas, entered into a Medicaid Provider Contract with the Texas Department of Human Services (TDHS) to provide medical and nursing care to residents who were eligible to receive Medicaid under the Title XIX Medical Assistance Program. Under that contract, Terrace agreed to comply with all state and federal regulations relating to long-term care in exchange for compensation from TDHS.

On October 11, 1991, a team from the Department conducted an inspection of Terrace. Prior to September 1, 1993, the Department was the state agency responsible for conducting facility inspections and determining compliance with regulations. The inspectors determined that there were numerous violations of the minimum standards for participation in the Medicaid program. Terrace was not in compliance with the following eleven requirements: (1) the development of comprehensive care plans to reflect each resident's needs; (2) the provision of necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident; (3) the prevention of pressure sores except when medically unavoidable; (4) the appropriate treatment for incontinent patients to restore as much normal bladder function as possible; (5) the appropriate treatment for patients fed by gastronomy tubes to prevent aspiration pneumonia, diarrhea, vomiting, dehydration, metabolic abnormalities, and nasal-pharyngeal ulcers; (6) the protection of the residents' environment from accident hazards; (7) the maintenance of residents within acceptable nutritional parameters; (8) the proper care for patients with colostomies; (9) the maintenance of an infection control program to help prevent the development and transmission of disease and infection; (10) the maintenance of an effective pest control program; and (11) the adequate provision of nursing staff to maintain the highest practicable physical, mental, and psychosocial well-being of each patient.

Pursuant to the Texas Administrative Code, the Department can take various actions following an inspection. These actions include: (1) invocation of the automatic cancellation clause; (2) 23–day termination of certification (fast-track termination) based on serious and/or immediate threat to resident health and safety; and (3) 90–day termination of certification based on repeat deficiencies, deficiencies which limit a facility's capacity to render adequate care, or deficiencies which jeopardize resident health and safety. 25 Tex. Admin. Code §§ 145.146, 145.146 (West Supp.1992). If a facility remedies the violations before the end of either the 23–day or 90–day termination period, then the facility's certification will not be terminated. Fasttrack termination allows a facility considerably less time to remedy its violations before being decertified than does the 90–day termination track, and the imposition of this harsher sanction requires an added showing of immediate or serious threat to health and safety rather than just jeopardy to health and safety. *Id.* § 145.146. At an informal conference, the inspection team notified facility staff that Terrace was in violation of several Medicaid program participation requirements and that the team would recommend 90–day termination of Terrace's Medicaid certification.

The inspection team revisited Terrace on October 14, and at the exit conference again informed the facility staff that the team

would *recommend* that Terrace be placed on a 90–day termination track. The inspectors alerted Terrace that this recommendation was subject to review, and that the recommendation would probably be overturned in favor of faster termination by the Department's Austin office due to the seriousness of the facility's violations. Although inspectors are allowed to use their professional judgment in determining whether the acts or omissions of a facility pose a serious and immediate threat, inspectors' recommendations are subject to review, concurrence, or other determination by the Chief of the Bureau of Long–Term Care or the Director of Licensing and Certification Services Division. *Id.* § 145.84(b)(1). Pursuant to this statutory provision, the Austin and regional staff reviewed the findings of the inspection team and overturned the inspectors' recommendation. The Austin staff determined that the deficiencies at Terrace were severe enough to pose an immediate and serious threat to the health and safety of one or more residents, thus warranting fast-track termination.

The Department sent Terrace notice of its findings in a letter dated October 16, 1991. The letter enumerated the eleven deficiencies that posed an immediate threat to patient health and safety, explained that the facility was entitled to reconsideration of the action, and stated that the termination of certification would be effective November 6, 1991.

In a letter dated October 31, 1991, Terrace timely requested a formal hearing concerning the proposed decertification action. A hearing examiner conducted a hearing from February 26–27, 1992, to take evidence to determine: (1) whether the deficiencies found at Terrace during the inspection conducted October 11–14, 1991, posed a serious or immediate threat to patient health and safety; and (2) whether the fast-track decertification of the facility for Title XIX funds, effective November 6, 1991, was justified.

The hearing examiner submitted his Proposal for Decision to the Department, and the Department adopted the hearing examiner's findings of fact and conclusions of law. The Department subsequently issued an order stating (1) the conditions at Terrace posed an immediate threat to patient health or safety, and (2) the Licensing and Certification Services Division of the Department of Health was justified in decertifying Terrace. Terrace subsequently sought judicial review in district court, which upheld the Department's decision. Terrace appeals to this Court.

## STANDARD OF REVIEW

The substantial evidence rule governs appeals of administrative orders. In *North Alamo Water Supply Corp. v. Texas Dep't. of Health,* 839 S.W.2d 448 (Tex.App.—Austin 1992, writ denied), this Court summarized the various articulations of the substantial evidence rule as follows:

1. The findings, inferences, conclusions, and decisions of an agency are presumed to be supported by substantial evidence, and the burden is on the party contesting the order to prove otherwise;

2. In applying the substantial evidence test, the reviewing court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence of questions committed to agency discretion;

3. Substantial evidence is more than a scintilla, but the evidence in the record may preponderate against the decision of the agency and nonetheless amount to substantial evidence;

4. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency;

5. The agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.

*Id.* at 452–53 (citing *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 452–53 (Tex.1984)). This Court may not reverse the administrative order unless the agency record demonstrates that Terrace's substantial rights have been prejudiced by the Department committing one of

the errors listed in section 2001.174(2)(A)-(F) of the Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.174 (West 1995); *see also Board of Trustees of ERS v. Benge*, 942 S.W.2d 742, 744 (Tex.App.—Austin 1997, writ denied). Terrace assumes a heavy burden in seeking to have the administrative order reversed on the basis of lack of substantial evidence.

## DISCUSSION

Terrace raises five points of error. Terrace's first three points of error complain of the Department's imposition of fast-track termination. These complaints are: (1) the Department failed to follow federally mandated guidelines and regulations for imposing fast-track terminations against a certified nursing facility; (2) no substantial evidence exists in the record to support the imposition of fast-track termination against Terrace; and (3) the Department's order to terminate Terrace was arbitrary and capricious and characterized by an abuse of discretion, based on the fact that the hearing examiner imposed a standard other than "immediate and serious threat" to justify the imposition of fast-track termination. We will first address the substantial evidence point.

■ Terrace contends that the order for decertification cited only two specific deficiencies as the basis for upholding fast-track termination: (1) the facility's failure to lock and monitor a storage room containing noxious chemicals constituted a life-threatening emergency, and (2) the facility's inadequate staffing subjected residents to injuries and health risks. Terrace argues that since the facility corrected the first deficiency by placing a lock on the closet door, there was an insufficient basis to justify fast-track termination. We disagree. The record is rife with evidence of multiple health and safety violations at Terrace. Although the order

for decertification only cited two *specific* deficiencies, the order incorporated the hearing examiner's findings of fact and conclusions of law, which evidence many other violations. The real question, then, is whether the agency was reasonable in characterizing the violations resulting from inadequate staffing as serious or immediate.

Ultimately, inadequate staffing at Terrace was the overarching defect which led to a pervasive pattern of substandard care at the facility. The inadequate ratio of staff to residents subjected residents to a host of health injuries and safety risks, including: (1) care plans which did not reflect residents' needs; (2) residents who were encrusted with dried feces and left to lie in cold urine; (3) a lack of devices or procedures to prevent the exacerbation of pressure sores; and (4) the failure to keep medical devices clean and the premises sanitary and free of infection. The record reflects a reasonable basis for the agency to have determined that the many violations of minimum Medicaid standards found at Terrace *collectively* posed a serious and immediate threat to the residents' health and safety. The evidence of substandard care provided to Resident No. 1 was enough, standing alone, to justify the agency's determination that the health and safety infractions at Terrace were serious and immediate.[1] We accord great deference to the agency to use its expertise to determine those violations which pose a serious and immediate threat to health and safety. Terrace failed to show that the ratio of staff to residents at Terrace appreciably changed, or that the pervasive substandard conditions were ameliorated. Having found substantial evidence in the record to justify the Department's determination of fast-track termination, we overrule Terrace's second point of error.

---

1. Resident No. 1 was observed to be in Respiratory Isolation for Methcillin Resistant Staphylococcus Auerus of the respiratory tract, but his door was open. His tongue was thickly coated (1/4–1/2 inches) with a white, solid exudate. When he stuck out his tongue, a 1½ inch piece of this white matter broke off. The pillow over his colostomy bag was soiled with a moderate amount of pus-like exudate and serosanguinous drainage. An area of 2″ × 2″ around his colosto-

my bag was excoriated and had a large amount of yellow-green tenacious drainage which was draining toward his inguinal area and creating further excoriation. His gastronomy tube with a retaining bumper was pulled out of the abdominal wall for over two inches, and this exposed portion of the tube between the abdominal wall and the retainer was covered with an encrusted brown-yellow substance.

■ Terrace's first point of error maintains that the Department failed to follow its federally mandated guidelines and regulations for imposing fast-track termination. State regulations approved by a federal agency, the Health Care Financing Administration, detail the termination procedures for a facility that fails to substantially meet one or more conditions of participation in the Medicaid Program. *See* State Operations Manual §§ 3010, 3012. The recommendations of termination made by inspectors are subject to review by the Department. Tex. Admin. Code § 145.84(b)(1). The Department followed the relevant regulations, and the authorized personnel at the Department appropriately decided to upgrade the inspectors' recommendation of 90–day termination to fast-track termination. *See id.* Terrace contends that failure to follow federal guidelines created a due process violation. We conclude there was no due process violation in this case. Terrace was properly notified about the violations both at the exit interview and in a subsequent letter. Terrace requested and was granted a formal hearing before a hearing examiner who, after viewing all the evidence, upheld the Department's decision. The hearing examiner's findings, which were set out in a Proposal for Decision, were supported by substantial evidence of substandard care at Terrace. The Department adopted the hearing examiner's findings in an order that found the conditions at Terrace to pose an "immediate threat to patient health and/or safety." All interagency appeals procedures were properly followed. Thus, we overrule Terrace's first point of error.

■ Our determination that substantial evidence supports the Department's imposition of fast-track termination essentially disposes of Terrace's third point of error: that the Department's order to terminate Terrace was arbitrary and capricious and characterized by an abuse of discretion. Generally, an administrative decision is not arbitrary or capricious if it is reasonably supported by substantial evidence. *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex.1966). An agency abuses its discretion in reaching a decision if it omits from its consideration factors that the legislature intended the agency to consider, includes in its consideration irrelevant factors, or reaches a completely unreasonable result after weighing only relevant factors. *Statewide Convoy Transports Inc. v. Railroad Comm'n of Texas,* 753 S.W.2d 800, 804 (Tex.App.—Austin 1988, no writ). This Court must presume that the order is valid and supported by substantial evidence, and the burden of proving otherwise is on the appellant. *See Vandygriff v. First Sav. & Loan Ass'n of Borger,* 617 S.W.2d 669, 673 (Tex.1981). Terrace has failed to rebut the presumption that the Department's order is valid. Having determined there is substantial evidence in the record to justify upholding the Department's decision, and concluding that the Department did not arrive at its decision without considering the relevant factors, we overrule Terrace's third point of error.

■ In its fourth point of error, Terrace argues that the agency's order must be reversed because the Department promulgated it more than 120 days after the effective date of Terrace's decertification, in violation of a federal regulation. *See* 42 C.F.R. § 431.153 (1991). Pursuant to our previous decision in this case, we overrule this point of error on two grounds. First, Terrace has waived this issue by failing to present it to the agency by means of a motion for rehearing. Second, Terrace interprets the federal regulation too broadly. We read the regulation as requiring only that the evidentiary hearing itself, not the written order, must occur within 120 days of the order of decertification. *See* 42 C.F.R. § 431.151(b) (1991).

■ Finally, in Terrace's fifth point of error, prejudgment interest is sought in the amount of Medicaid vendor payments not made to Terrace following the termination of Terrace's Medicaid Provider Contract. The trial court did not err in failing to award prejudgment interest to Terrace because Terrace breached its contract and was appropriately decertified for contractrelated deficiencies which posed a serious and/or immediate threat to the health and safety of residents.

## CONCLUSION

Having disposed of and overruled all of Terrace's points of error, we affirm the ruling of the trial court and uphold the Department's fast-track termination of Terrace from Medicaid certification.