# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00570-CV

**Fleetwood Community Home, Appellant**

**v.**

**Eric M. Bost, Commissioner, in his official capacity; and
Texas Department of Human Services, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN102414, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

**O P I N I O N**

Fleetwood Community Home appeals from the district court=s judgment affirming a final order of the Texas Department of Human Services. The Department=s order terminated Fleetwood=s Medicaid certification for a ten-day period, resulting in Fleetwood=s forfeiture of Medicaid payments for the period. On appeal, Fleetwood contends that the Department=s decision was an abuse of discretion and not reasonably supported by substantial evidence because (1) the record contained unrefuted evidence that any immediate and serious threat to the facility=s residents had been removed prior to the termination date, (2) two of the Department=s findings of fact misinterpreted pivotal testimony, (3) the Department=s inspectors did not review unrefuted evidence that would have changed their assessment of any threat to the facility=s residents, and (4) the administrative law judge (ALJ) excluded relevant evidence and omitted from his findings and conclusions evidence favorable to Fleetwood. We will affirm the district-court judgment affirming the Department=s order.

## BACKGROUND

Fleetwood operates an Intermediate Care Facility for the Mentally Retarded (ICF/MR). The Department is the state surveying agency authorized to certify ICF/MR facilities for Medicaid participation. In this capacity, it conducts periodic facility inspections and determines compliance with state and federal regulations pertaining to ICF/MR care. Fleetwood is licensed by the Department as an ICF/MR.

From October 13 through 15, 1999, the Department conducted an inspection of Fleetwood. The Department concluded that there was an immediate and serious threat to the health and

safety of the residents based on the circumstances surrounding one resident=s aggression and biting behavior and another resident=s respiratory illness.  The Department then terminated Fleetwood=s certification, effective November 7, 1999.  Before the termination date, Fleetwood notified the Department that it had corrected the deficiencies identified in the initial survey.  Based on Fleetwood=s representations, the Department conducted another survey from November 2 through 4.  During this resurvey, the Department observed further injuries to residents, inadequate staff training, and failure to provide appropriate nursing services to residents; it concluded that the immediate and serious threat still existed.  A court-appointed trustee inspected the facility two days later on November 6, 1999; he found untrained staff at the facility.  The Department terminated Fleetwood=s certification the next day as scheduled.[1]

Fleetwood challenged the ten-day termination period and requested that a hearing be conducted at the State Office of Administrative Hearings.  A hearing was conducted, and the ALJ issued a proposal for decision recommending that the ten-day termination be affirmed.  The Department entered a final order adopting the ALJ=s findings of fact and conclusions of law and sustained the ten-day termination.

After the Department denied its motion for rehearing, Fleetwood filed a suit for judicial review with the Travis County district court.  The district court affirmed the Department=s final order, and Fleetwood brought this appeal.

_____

[1] Fleetwood immediately sought recertification, and the Department recertified it on November 17, 1999, after conducting another survey that indicated Fleetwood had corrected its deficiencies.

3

## STANDARD OF REVIEW

The substantial evidence rule governs appeals of administrative orders. In conducting a substantial evidence review, we determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex. App.CAustin 1999, no pet.). We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. *Id.* The issue for the reviewing court is not whether the agency reached the correct conclusion, but whether there is some reasonable basis in the record for its action. *City of El Paso v. Public Util. Comm≡n*, 883 S.W.2d 179, 185 (Tex. 1994). The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *Stratton*, 8 S.W.3d at 30.

## DISCUSSION

### A*Fast-track termination*@

The issues on appeal center upon the application of so-called Afast-track termination@ of a facility=s certification. AFast-track termination@ refers to a period of twenty-three days after the Department notifies a facility of a finding of Aimmediate and serious threat@ during which the facility has an opportunity to remedy its deficiencies. If the facility remedies the violations before the end of the twenty-three-day period, its certification will not be terminated. *Texas Health Enters. v. Texas Dep=t of Health*, 954 S.W.2d 168, 170 (Tex. App.CAustin 1997, no pet.). Fleetwood argues that the twenty-three-day remediation period

4

applies and that it remedied the conditions leading to the Department=s finding of immediate and serious threat by the twenty-third day; the Department claims for the first time on appeal that the remediation period does not apply to ICF/MRs, but only to nursing facilities, and thus Fleetwood had no right to remediate. We must determine, as a threshold issue, whether fast-track termination applies to ICF/MRs.

Title 42, part 488, subpart F of the Code of Federal Regulations governs enforcement of compliance for long-term care facilities. Subpart F contains section 488.410, which states: AIf there is immediate jeopardy to resident health or safety, the State must . . . either terminate the provider agreement within 23 calendar days of the last date of the survey or appoint a temporary manager to remove the immediate jeopardy.@ 42 C.F.R. ' 488.410(a) (2003). If the court appoints a temporary manager, the state still Amust terminate the provider agreement within 23 calendar days of the last day of survey if the immediate jeopardy has not been removed.@[2] *Id.*

Section 488.410 does not on its face state whether it applies to ICF/MRs. *See id.* However, it does refer to termination of a Aprovider agreement.@ *See id.* Section 488.1Cthe definition section for part 488Cdefines Aprovider@ as Aa hospital, critical access hospital, skilled nursing facility, nursing facility, home health agency, hospice, comprehensive outpatient rehabilitation facility, or provider of outpatient physical therapy or speech pathology services.@ 42 C.F.R. ' 488.1 (2003). Section 400.203 contains definitions specific to Medicaid that apply to the entire chapter IV, under which part 488 falls. It provides: AAs used in connection with the Medicaid program, unless the context indicates otherwise . . .

---

[2] Neither party disputes that the district court appointed a temporary manager (trustee) in this case.

Nursing facility . . . means an SNF or an ICF participating in the Medicaid program.@ Section 488.410 applies to Aproviders,@ which are defined to include Anursing facilities.@ *See* 42 C.F.R. '' 488.1, 488.410. Nursing facilities, in turn, are defined for Medicaid purposes to include ICFs. Therefore, it is reasonable to conclude that section 488.410 applies to ICF/MRs.

Moreover, the statutory basis for part 488 derives from sections 1819(h) and 1919(h) of the Social Security Act, which have been codified at 42 U.S.C. '' 1395i-3(h) and 1396r(h), respectively. Section 1396r(h) outlines enforcement procedures to be used when a survey has revealed immediate jeopardy in a nursing facility. A nursing facility is defined as an institution

> whichC(1) is primarily engaged in providing to residents . . . (C) on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services (above the level of room and board) which can be made available to them only through institutional facilities, and is not primarily for the care and treatment of mental diseases.

42 U.S.C.A. ' 1396r(a) (2002). Fleetwood=s facility falls squarely within this definition. Additionally, the statutory definition of an ICF/MR covers institutions that Aprovide health or rehabilitative services for mentally retarded individuals,@ which would include Fleetwood=s facility. *See id.* ' 1396d(d) (2002).

Both a federal administrative agency and the Department have interpreted the regulation as applying to ICF/MRs. The Centers for Medicare and Medicaid Services (CMS) within the Department of Health and Human Services is the federal agency charged with establishing interpretive guidelines to the federal Medicaid regulations. The CMS has promulgated the State Operations Manual (SOM) in this respect. *See* Centers for Medicare and Medicaid Services, State Operations Manual, *available at*

http://cms.hhs.gov/manuals/pub07pdf/pub07pdf.asp [hereinafter SOM]. The SOM provides for a remediation period of twenty-three days in cases where a trustee is appointed. *See* SOM '' 3010, 7308. SOM sections 3010 and 7308 provide that after a determination of immediate jeopardy, a termination will occur unless the jeopardy is removed.[3] Although neither SOM section 3010 nor 7308 specifically states that it applies to ICF/MRs, section 7006 applies to nursing facilities receiving Medicaid and defines Anursing facility@ as it is defined in 42 U.S.C. ' 1396r(a), which would include an ICF/MR. SOM ' 7706; *see also* 42 U.S.C.A. ' 1396r(a). Thus, the SOM interprets section 488.410 as providing a twenty-three-day remediation period to ICF/MRs.

The Department has incorporated the SOM into its operating procedures. Department staff testified that fast-track termination applied in Fleetwood=s case and that it afforded Fleetwood twenty-three

---

[3] The SOM and the Department use the phrase Aimmediate and serious threat@ as a surrogate for the phrase used in the regulations, Aimmediate jeopardy.@ *See* 42 C.F.R. '' 488.301, .410 (2003); Centers for Medicare and Medicaid Services, State Operations Manual ' 3010, app. Q at 3, *available at* http://cms.hhs.gov/manuals/pub07pdf/pub07pdf.asp [hereinafter SOM]. The two are functional equivalents, respectively meaning Ahaving a high probability that serious harm or injury to patients could occur at any time, or already has occurred and may well occur again if patients are not protected effectively from the harm, or the threat is not removed@ and Aa situation in which the provider=s noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident.@ SOM ' 3010, app. Q at 3; 42 C.F.R. ' 488.301.

days to remove the immediate and serious threat, and if remediation occurred in that period, termination procedures would cease. It is only on appeal that the Department urges that section 488.410 does not apply to ICF/MRs.

Although we owe no deference to agency interpretations when a particular statute or regulation is unambiguous, we note the CMS and Department interpretations to highlight the effect of the Department=s assertion for the first time on appeal that section 488.410 does not apply to ICF/MRs. *See Amarillo Indep. Sch. Dist. v. Meno*, 854 S.W.2d 950, 954 n.6 (Tex. App.**C**Austin 1993, writ denied). Even if the section were ambiguous, the Department=s position on appeal is inconsistent with its previous, long-standing interpretation. A long-standing and uniformly-applied interpretation is entitled to greater deference than a recent one. *Everest Nat=l Ins. Co. v. Texas Workers=Comp. Comm=n*, 80 S.W.3d 269, 274 (Tex. App.**C**Austin 2002, no pet.); *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 170 (Tex. App.**C**Austin 1997, no pet.). Thus, we hold that section 488.410 applies to ICF/MRs, entitling Fleetwood to a twenty-three-day remediation period. We therefore review the Department=s decision to terminate Fleetwood=s Medicaid certification within the context of the remediation period and will affirm if there is substantial evidence that Fleetwood had not removed the immediate and serious threat by the twenty-third day.

Fleetwood=s issues can be divided into two alleged errors: that the Department=s findings, conclusions, and decision (1) are not reasonably supported by substantial evidence and (2) are arbitrary, capricious, or an abuse of discretion.[4] We will address these two points separately.

---

[4] Fleetwood=s brief lists four issues presented but briefs the issues in only two parts, with several

8

*Substantial evidence review*

Fleetwood challenges the Department=s termination as not reasonably supported by substantial evidence, claiming that (1) findings of fact numbers forty-nine and fifty misinterpreted pivotal testimony by the court-appointed trustee and (2) the record contains unrefuted evidence that any alleged threat had been removed prior to the twenty-third day, and the Department presented no evidence that any threat existed as of that date. These challenges are intertwined because they center upon the testimony of the court-appointed trustee, who entered the facility on the twenty-second day.

The Department argues that Fleetwood did not object to any specific findings of fact or conclusions of law in its motion for rehearing and has thus waived any errors pertaining to them. We disagree. Fleetwood=s motion provided sufficient notice to the agency of its allegations, including alleged error with respect to findings of fact forty-nine and fifty.[5]

---

subparts. We will address its arguments as they fall under the two main alleged errors.

[5] To preserve error, the appellant must assert the error in its motion for rehearing with sufficient precision to provide notice to the agency of the alleged error. *Bowman v. Tex. State Bd. of Dental Exam=rs*, 783 S.W.2d 318, 321 (Tex. App.CAustin 1990, no writ). In its motion for rehearing,

9

Fleetwood did allege errors regarding numerous findings of fact and conclusions of law, although it did so rather inelegantly.  It referenced what it alleged to be erroneous findings of fact and conclusions of law in its motion for rehearing not by number (e.g., Afinding of fact number fifty@), but as references to page numbers and numbered paragraphs appearing in the proposal for decision (e.g., Afinding of fact [at p. 17, & 50]@). We recommend that future litigants utilize the former method, which will streamline the reader=s interpretation.

Findings of fact forty-nine and fifty state that (1) Athe Trustee did not observe any immediate and serious threat to the residents of the Petitioner=s facility@ and (2) Athe Trustee observed that employees in Petitioner=s facility were untrained, and concluded that, even if there were no presently existing immediate and serious threat to the residents, untrained employees represented a heightened potential for reoccurrence of immediate and serious threats.@ If supported by substantial evidence, these findings support termination because an immediate and serious threat includes the possibility of reoccurrences of the conditions that initially led to the determination of a threat. *See* 42 C.F.R. ' 488.301; SOM ' 3010, app. Q at 3.

Fleetwood argues that these findings misinterpreted the trustee because they impute to his testimony a conclusion that the trustee himself did not actually make: that the untrained staff he found represented a heightened potential for reoccurrence of the initial circumstances constituting immediate and serious threat. Although the trustee testified that he did not find an immediate and serious threat on the twenty-second day, in the same breath he testified that Ait could be construed that having the potential of reoccurrence of the initial occurrences would be heightened by having untrained staff. And I did find untrained staff.@ This testimony could reasonably lead the agency to make findings of fact forty-nine and fifty.

Fleetwood attaches too much significance to the word Aconcluded@ in the second finding. Although the trustee did not explicitly state, AI *concluded* that the untrained employees represented a heightened potential for reoccurrence,@ a reasonable person could find from the testimony that the trustee did indeed conclude that untrained staff at the facility presented a heightened potential for threats. The evidence in the record may preponderate against the agency=s decision and nonetheless amount to

11

substantial evidence. *Texas Health Facilities Comm≠n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984); *Lewis v. Metro. Sav. & Loan Ass≠n*, 550 S.W.2d 11, 13 (Tex. 1977). If there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld. *Charter Med.*, 665 S.W.2d at 453. The probability that a harm or injury could recur as a result of untrained staff is as much an immediate and serious threat as the initial occurrence of such harm or injury. The definition of immediate and serious threat includes the possibility of reoccurrences. We hold that there is substantial evidence to support findings of fact numbers forty-nine and fifty.

Fleetwood next argues that it removed or remedied the deficiencies noted by the Department prior to the twenty-third day. It claims that there is no evidence in the record of any deficiencies observed by the Department after November 4, the last day of the resurvey. It then cites to portions of the transcript where testimony reveals that the Department did not cite any relevant deficiencies as occurring after November 4 in its follow-up survey of November 17, which resulted in its recertification. Therefore, its argument runs, the deficiencies could not have existed at any time after the resurvey on November 4; thus Fleetwood remedied the deficiencies within the twenty-three-day period. Although appellant is correct in that there is little or no testimony in the record as to the status of most of the deficiencies on the exact dates of November 5, 6, and 7Cthe last three days during which it could have remedied its deficienciesCthe record clearly contains evidence that the facility did have the deficiency of untrained staff, as noted by the trustee, on November 6. More to the point, however, the Department is not required to disprove that a facility has remedied its violations constituting immediate and serious threats on any given day within the fast-track period, much less on the penultimate day. Rather, the facility has the

12

burden to prove that it has removed the immediate jeopardy by the twenty-third day.  Here, Fleetwood represented to the Department that it had removed the jeopardy, which resulted in the Department=s November 4 resurvey.  The Department=s findings that most of the deficiencies still existed as of its November 4 resurvey amounts to substantial evidence of immediate and serious threat.  Fleetwood relies on the statement by the trustee that on November 6 there was Ano immediate and serious threat@ and evidence of measures it had taken to remedy the immediate jeopardy within the fast-track period.  However, the ALJ was free to weigh this evidence against the Department=s evidence of a continuing threat and conclude that Fleetwood had not removed the threat.  We hold that the record contains substantial evidence to support the Department=s order.

Fleetwood also argues that the Department=s order was not reasonably supported by substantial evidence because (1) the ALJ excluded relevant and material evidence and erred in failing to make findings and conclusions reflecting evidence favorable to Fleetwood and (2) state surveyors conceded that they did not review or disregarded evidence at the time of inspections that would have changed their assessment of immediate and serious threat.

The evidence excluded by the ALJ pertained to a witness=s observation of the trustee making a phone call requesting clarification of why he was needed at the facility.  However, Fleetwood brings up the issue of the exclusion of this evidence for the first time on appeal.  Because Fleetwood did not complain in its motion for rehearing about the ALJ=s exclusion of this evidence,  it did not preserve the issue for review.  To preserve error, the motion must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts was error; and (2) the legal basis

13

upon which the claim of error rests. *Central Power & Light Co./Cities of Alice v. Public Util. Comm=n of Tex.*, 36 S.W.3d 547, 569 (Tex. App.CAustin 2000, pet. denied); *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.CAustin 1987, writ ref=d n.r.e.). Fleetwood did not allege that evidence was erroneously excluded in its motion for rehearing. It has thus not preserved the issue for our review.

Fleetwood claims that the ALJ failed to make findings or conclusions reflecting considerable evidence favorable to Fleetwood that would have proved it had removed the immediate and serious threat. In other words, the ALJ did not make the findings or conclusions that Fleetwood sought, and now Fleetwood asks this Court to review the record and remand the case so that findings and conclusions favorable to Fleetwood will be made. Such an action is not in the province of this Court, which must defer to the ALJ=s findings and conclusions if there is some reasonable basis in the record to support them. *See Charter Med.*, 665 S.W.2d at 452. The test is not whether the agency reached the correct conclusion, but whether the evidence in support of its conclusion is substantial. *Id.* We may not substitute our judgment for that of the ALJ regarding the weight of the evidence. *Id.* Here, the record contains substantial evidence to support the ALJ=s findings and conclusions regarding immediate and serious threat. Even if the evidence that Fleetwood claims was not acknowledged in any findings or conclusions preponderates against the Department=s determination of immediate and serious threat, we cannot say that the record lacks substantial evidence to support the Department=s conclusion.

Fleetwood asserts that the Department=s surveyors repeatedly testified that they did not have complete information regarding resident injuries and failed to review facility charts and records prior to making their determinations of immediate and serious threat. In one instance, a surveyor noticed an

14

unexplained bruise on a resident during the resurvey in early November. Although the presence of the bruise and the facility nurse=s lack of knowledge of the bruise were factors that led the surveyor to determine that there was still an immediate and serious threat present, the surveyor failed to look at the resident=s chart, which revealed that the resident had been out of the facility for several days until the night before the resurvey. Fleetwood asserts that the ALJ erred by not making a finding or conclusion reflecting such mitigating testimony. However, the evidence of the injury itself is substantial evidence to support the findings and conclusions that the ALJ did make; the ALJ need not have weighed the evidence according to Fleetwood=s urging. Indeed, the ALJ=s omission of findings and conclusions reflecting possible mitigating circumstances goes to his fact-finding role, and we cannot overturn his conclusions if there is substantial evidence to support them. The evidence in the record of resident injuries, untrained staff, and failure to provide adequate and appropriate nursing services amounts to substantial evidence despite evidence offered by Fleetwood of measures it took to remediate. We overrule Fleetwood=s issue asserting lack of substantial evidence.

### *Arbitrary and capricious review*

Fleetwood argues that the Department=s termination of its Medicaid certification was arbitrary, capricious, and an abuse of discretion. Generally, an administrative decision is not arbitrary and capricious if it is supported by substantial evidence. *Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex. 1966); *Texas Health Enters. v. Texas Dep=t of Health*, 954 S.W.2d 168, 173 (Tex. App.CAustin 1997, no pet.). However, Fleetwood cites several cases requiring appellate courts to otherwise set aside administrative actions taken in contravention of due process rights. *See Lewis v. Metro. Sav. & Loan*

15

*Ass=n*, 550 S.W.2d 11 (Tex. 1977); *Park Haven, Inc. v. Texas Dep=t of Human Servs.*, 80 S.W.3d 211 (Tex. App.ーAustin 2002, no pet.); *Starr County v. Starr Indus. Servs.*, 584 S.W.2d 352 (Tex. Civ. App.ーAustin 1979, writ ref=d n.r.e.). We find these cases inapposite here and refuse to extend their holdings. *Lewis* dealt exclusively with an ALJ=s rulings excluding competent and relevant evidence offered by the appellant. *See Lewis*, 550 S.W.2d at 12. The Court held that the ALJ had erred in excluding the evidence and that an administrative order can be invalid for arbitrariness when a contesting party is denied due process of law in the conduct of the administrative hearing. *Id.* at 15-16. As already discussed, Fleetwood did not preserve its error relating to exclusion of evidence by the ALJ.

*Park Haven* concerned the question of whether there was substantial evidence to support an ALJ=s finding that the Department had considered the threshold, mandatory statutory criterion of a nursing home=s compliance history in finding that its deficiencies posed a serious threat to resident health and safety. *See Park Haven*, 80 S.W.3d at 213. Noting that the ALJ had excluded evidence precisely on the point of the home=s compliance history, this Court determined that the record contained no evidence going to the home=s compliance history other than a generalized description of what usually happens in the assessment process. *Id.* at 215. We held that the ALJ=s order was thus arbitrary, capricious, and not supported by substantial evidence. *Id.* Here, the record contains evidence pertaining to whether Fleetwood=s deficiencies amounted to an immediate and serious threat, specifically testimony regarding staff training, resident injuries, and nursing services.

In *Starr County*, this Court examined two questionable actions taken by the Texas Water Quality Board with respect to a permit applicant: (1) lack of providing notice to the applicant of additional

16

requirements it had to meet and (2) consideration of a non-statutory standard in its decision to deny the application. *See Starr County*, 584 S.W.2d at 356. Citing *Lewis* for the proposition that an agency order may be supported by substantial evidence and yet be invalid for arbitrariness, we affirmed the district court=s judgment vacating the order. *Id.* at 355-56. There, we noted that the major factor running through arbitrary-capricious review cases is that parties must be able to know what is expected of them in the administrative process. *Id.* at 356. For instance, when an agency has been subjected to pressure from congressional sources in issuing an order, the order may be invalid for arbitrariness or capriciousness. *Id.*; *see Texas Med. Ass=n v. Mathews*, 408 F.Supp. 303, 306 (W.D. Tex. 1976) (setting aside agency order because the agency had been subjected to pressures from congressional sources). Fleetwood has not asserted any errors committed by the ALJ or the Department that rise to the level of denying it notice of the administrative process or constituting arbitrary action.

An agency abuses its discretion in reaching a decision if it omits from its consideration factors that the legislature intended the agency to consider, includes in its consideration irrelevant factors, or reaches a completely unreasonable result after weighing only relevant factors. *Texas Health Enters.*, 954 S.W.2d at 173 (citing *Statewide Convoy Transps., Inc. v. Railroad Comm=n of Tex.*, 753 S.W.2d 800, 804 (Tex. App.C Austin 1988, no writ)). **This Court must presume that the order is valid, and the burden of proving otherwise is on the appellant. *Id.* Fleetwood does not argue that the ALJ or the Department failed to consider relevant, legislative factors or considered irrelevant factors in reaching its decision. Furthermore, we have determined in our substantial evidence review that**

17

**the Department=s result was not completely unreasonable.  We thus overrule Fleetwood=s issue with respect to arbitrariness, capriciousness, and abuse of discretion.**

## CONCLUSION

**The Department=s decision was supported by substantial evidence and was not an abuse of discretion.  We affirm the district court=s judgment affirming the Department=s order that terminated Fleetwood=s Medicaid certification for the ten-day period.**

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   April 10, 2003