FLEETWOOD COMMUNITY
HOME, Appellant,

v.

Eric M. BOST, Commissioner, in his official capacity; and Texas Department of Human Services, Appellees.

No. 03–02–00570–CV.

Court of Appeals of Texas,
Austin.

June 26, 2003.

Jerri Lynn Ward, Garlo Ward, LLP, Dana K. Stripling, Law Office of Dana Kristen Stripling, Austin, for appellant.

Robert L. Seibert, Asst. Atty. Gen., Austin, for appellee.

Before Chief Justice LAW, Justices B.A. SMITH and PURYEAR.

## OPINION

BEA ANN SMITH, Justice.

To address concerns raised in the appellees' motion for rehearing, we withdraw our original opinion and judgment issued April 10, 2003, and substitute this opinion in its place.

Fleetwood Community Home appeals from the district court's judgment affirming a final order of the Texas Department of Human Services. The Department's order terminated Fleetwood's Medicaid certification for a ten-day period, resulting in Fleetwood's forfeiture of Medicaid payments for the period. On appeal, Fleetwood contends that the Department's decision was an abuse of discretion and not reasonably supported by substantial evidence because (1) the record contained unrefuted evidence that any immediate and serious threat to the facility's residents had been removed prior to the termination date, (2) two of the Department's findings of fact misinterpreted pivotal testimony, (3) the Department's inspectors did not review unrefuted evidence that would have changed their assessment of any threat to the facility's residents, and (4) the administrative law judge (ALJ) excluded relevant evidence and omitted from his findings and conclusions evidence favorable to Fleetwood. We will affirm the district-court judgment affirming the Department's order.

## BACKGROUND

Fleetwood operates an Intermediate Care Facility for the Mentally Retarded (ICF/MR). The Department is the state surveying agency authorized to certify ICF/MR facilities for Medicaid participation. In this capacity, it conducts periodic facility inspections and determines compliance with state and federal regulations pertaining to ICF/MR care. Fleetwood is licensed by the Department as an ICF/MR.

From October 13 through 15, 1999, the Department conducted an inspection of Fleetwood. The Department concluded that there was an immediate and serious threat to the health and safety of the residents based on the circumstances surrounding one resident's aggression and biting behavior and another resident's respiratory illness. The Department then terminated Fleetwood's certification, effective November 7, 1999. Before the termination date, Fleetwood notified the Department that it had corrected the deficiencies identified in the initial survey. Based on Fleetwood's representations, the Department conducted another survey from November 2 through 4. During this resurvey, the Department observed further injuries to residents, inadequate staff training, and failure to provide appropriate nursing services to residents; it concluded that the immediate and serious threat still existed. A court-appointed trustee inspected the facility two days later on November 6, 1999; he found untrained staff at the facility. The Department terminated Fleetwood's certification the next day as scheduled.[1]

Fleetwood challenged the ten-day termination period and requested that a hearing be conducted at the State Office of Administrative Hearings. A hearing was conducted, and the ALJ issued a proposal for decision recommending that the ten-day termination be affirmed. The Department entered a final order adopting the ALJ's findings of fact and conclusions of law and sustained the ten-day termination.

After the Department denied its motion for rehearing, Fleetwood filed a suit for judicial review in Travis County district court. The district court affirmed the Department's final order, and Fleetwood brought this appeal.

## STANDARD OF REVIEW

The substantial evidence rule governs appeals of administrative orders. In conducting a substantial evidence review, we determine whether the evidence as a whole is such that reasonable minds could have reached the same conclusion as the agency in the disputed action. *Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex.App.-Austin 1999, no pet.). We may not substitute our judgment for that of the agency and may only consider the record on which the agency based its decision. *Id.* The issue for the reviewing court is not whether the agency reached the correct conclusion, but whether there is some reasonable basis in the record for its action. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex.1994). The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *Stratton*, 8 S.W.3d at 30.

1. Fleetwood immediately sought recertification, and the Department recertified it on November 17, 1999, after conducting another survey that indicated Fleetwood had correct- ed its deficiencies. This appeal addresses the ten-day period between termination on November 7 and recertification on November 17, 1999.

## DISCUSSION

Section 442.117(a)(2) of the Code of Federal Regulations requires the Department to terminate an ICF/MR's Medicaid certification if it finds deficiencies which "pose immediate jeopardy to residents' health and safety." *See* 42 C.F.R. § 442.117(a)(2) (2003). In this case, the Department terminated Fleetwood's certification pursuant to a "23–day fast track" procedure, which Department staff described as providing a 23–day period, following a survey finding immediate and serious threat to resident health or safety, during which the facility has an opportunity to remedy its deficien-

cies. Fleetwood argues that it remedied its violations before the end of the 23–day period, and that the Department therefore erred in terminating its certification.[2] Accordingly, we will affirm if there is substantial evidence that Fleetwood had not removed the immediate and serious threat by the twenty-third day.[3]

Fleetwood's issues can be divided into two alleged errors: that the Department's findings, conclusions, and decision (1) are not reasonably supported by substantial evidence and (2) are arbitrary, capricious, or an abuse of discretion.[4] We will address these two points separately.

**2.** Title 42, part 488, subpart F of the Code of Federal Regulations governs enforcement of compliance for "long-term care facilities." Subpart F contains section 488.410, which provides a 23–day remediation period after a survey reveals "immediate jeopardy to resident health or safety." *See* 42 C.F.R. § 488.410 (2003). Fleetwood argues that its Medicaid certification was terminated pursuant to this regulation; the State disputes this, claiming that section 488.410 does not apply to ICF/MRs, and therefore that Fleetwood could not avoid termination by remedying its deficiencies. However, neither the parties nor the ALJ relied on section 488.410 in the administrative proceeding. Instead, both Fleetwood and the Department proceeded under section 3010 of the State Operations Manual, promulgated by the Centers for Medicare and Medicaid Services—the federal agency charged with establishing interpretive guidelines to the federal Medicaid regulations—located within the Department of Health and Human Services. *See* Centers for Medicare and Medicaid Services, State Operations Manual, *available at* http://www.cms.hhs.gov/manuals/pub07pdf/part–03.pdf [hereinafter SOM]. State Operations Manual section 3010 provides for a 23–day remediation period, and appears to apply to ICF/MRs. Both the Department and Fleetwood proceeded as if there were a 23–day period available to Fleetwood for remediation. What is less clear is the statute or regulation on which the remediation period in section 3010 is based. Section 442.117(a)(2) of the Code of Federal Regulations, which applies to ICF/MRs, does not

mention a 23–day remediation. Section 488.410, which applies to long-term care facilities, does provide for 23–day remediation; but it is not at all clear whether section 488.410 applies to ICF/MRs. Because both parties relied on the State Operations Manual as the source of the fast-track termination procedure for Fleetwood, we will assume that the 23–day remediation period provided in section 3010 of the State Operations Manual applies. We leave for another day the question of which regulation is the source of the remediation period set forth in the State Operations Manual.

**3.** The State Operations Manual and the Department use the phrase "immediate and serious threat" as a surrogate for the phrase "immediate jeopardy" as used in the regulations. *See* 42 C.F.R. §§ 442.2, .117(a)(2) (2003); SOM § 3010, app. Q at 3. The two are functional equivalents, respectively meaning "having a high probability that serious harm or injury to patients could occur at any time, or already has occurred and may well occur again if patients are not protected effectively from the harm, or the threat is not removed" and "a situation in which immediate corrective action is necessary because the provider's noncompliance with one or more requirements of participation ... has caused, or is likely to cause, serious injury, harm, impairment, or death to an individual receiving care in a facility." SOM § 3010, app. Q at 3; 42 C.F.R. § 442.2.

**4.** Fleetwood's brief lists four issues presented but briefs the issues in only two parts, with

### Substantial evidence review

■ Fleetwood challenges the Department's termination as not reasonably supported by substantial evidence, claiming that (1) findings of fact numbers forty-nine and fifty misinterpreted pivotal testimony by the court-appointed trustee and (2) the record contains unrefuted evidence that any alleged threat had been removed prior to the twenty-third day, and the Department presented no evidence that any threat existed as of that date. These challenges are intertwined because they center upon the testimony of the court-appointed trustee, who entered the facility on the twenty-second day.

■ The Department argues that Fleetwood did not object to any specific findings of fact or conclusions of law in its motion for rehearing and has thus waived any errors pertaining to them. We disagree. Fleetwood's motion provided sufficient notice to the agency of its allegations, including alleged error with respect to findings of fact forty-nine and fifty.[5]

Findings of fact forty-nine and fifty state that (1) "the Trustee did not observe any immediate and serious threat to the residents of the Petitioner's facility" and (2) "the Trustee observed that employees in Petitioner's facility were untrained, and concluded that, even if there were no presently existing immediate and serious threat to the residents, untrained employees represented a heightened potential for

reoccurrence of immediate and serious threats." If supported by substantial evidence, these findings support termination because an immediate and serious threat includes the possibility of reoccurrences of the conditions that initially led to the determination of a threat. *See* 42 C.F.R. § 442.2; SOM § 3010, app. Q at 3.

Fleetwood argues that these findings misinterpreted the trustee because they impute to his testimony a conclusion that the trustee himself did not actually make: that the untrained staff he found represented a heightened potential for reoccurrence of the initial circumstances constituting immediate and ' serious threat. Although the trustee testified that he did not find an immediate and serious threat on the twenty-second day, in the same breath he testified that "it could be construed that having the potential of reoccurrence of the initial occurrences would be heightened by having untrained staff. And I did find untrained staff." This testimony could reasonably lead the agency to make findings of fact forty-nine and fifty.

■ Fleetwood attaches too much significance to the word "concluded" in the second finding. Although the trustee did not explicitly state, "I *concluded* that the untrained employees represented a heightened potential for reoccurrence," a reasonable person could find from the testimony that the trustee did indeed conclude that

---

several subparts. We will address its arguments as they fall under the two main alleged errors.

5. To preserve error, the appellant must assert the error in its motion for rehearing with sufficient precision to provide notice to the agency of the alleged error. *Bowman v. Tex. State Bd. of Dental Exam'rs*, 783 S.W.2d 318, 321 (Tex.App.-Austin 1990, no writ). In its motion for rehearing, Fleetwood did allege errors regarding numerous findings of fact

and conclusions of law, although it did so rather inelegantly. It referenced what it alleged to be erroneous findings of fact and conclusions of law in its motion for rehearing not by number (e.g., "finding of fact number fifty"), but as references to page numbers and numbered paragraphs appearing in the proposal for decision (e.g., "finding of fact [at p. 17, ¶ 50]"). We recommend that future litigants utilize the former method, which will streamline the reader's interpretation.

untrained staff at the facility presented a heightened potential for threats. The evidence in the record may preponderate against the agency's decision and nonetheless amount to substantial evidence. *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984); *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex.1977). If there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld. *Charter Med.*, 665 S.W.2d at 453. The probability that a harm or injury could recur as a result of untrained staff is as much an immediate and serious threat as the initial occurrence of such harm or injury. The definition of immediate and serious threat includes the possibility of reoccurrences. We hold that there is substantial evidence to support findings of fact numbers forty-nine and fifty.

■■ Fleetwood next argues that it removed or remedied the deficiencies noted by the Department prior to the twenty-third day. It claims that there is no evidence in the record of any deficiencies observed by the Department after November 4, the last day of the resurvey. It then cites to portions of the transcript where testimony reveals that the Department did not cite any relevant deficiencies as occurring after November 4 in its follow-up survey of November 17, which resulted in its recertification. Therefore, its argument runs, the deficiencies could not have existed at any time after the resurvey on November 4; thus Fleetwood remedied the deficiencies within the twenty-three-day period. Although appellant is correct in that there is little or no testimony in the record as to the status of most of the deficiencies on the exact dates of November 5, 6, and 7—the last three days during which it could have remedied its deficiencies—the record clearly contains evidence that the facility did have the deficiency of untrained staff, as noted by the trustee, on November 6. More to the point, however, the Department is not required to disprove that a facility has remedied its violations constituting immediate and serious threats on any given day within the fast-track period, much less on the penultimate day. Rather, the facility has the burden to prove that it has removed the immediate jeopardy by the twenty-third day. Here, Fleetwood represented to the Department that it had removed the jeopardy, which resulted in the Department's November 4 resurvey. The Department's findings that most of the deficiencies still existed as of its November 4 resurvey amounts to substantial evidence of immediate and serious threat. Fleetwood relies on the statement by the trustee that on November 6 there was "no immediate and serious threat" and evidence of measures it had taken to remedy the immediate jeopardy within the fast-track period. However, the ALJ was free to weigh this evidence against the Department's evidence of a continuing threat and conclude that Fleetwood had not removed the threat. We hold that the record contains substantial evidence to support the Department's order.

Fleetwood also argues that the Department's order was not reasonably supported by substantial evidence because (1) the ALJ excluded relevant and material evidence and erred in failing to make findings and conclusions reflecting evidence favorable to Fleetwood and (2) state surveyors conceded that they did not review or disregarded evidence at the time of inspections that would have changed their assessment of immediate and serious threat.

■ The evidence excluded by the ALJ pertained to a witness's observation of the trustee making a phone call requesting clarification of why he was needed at the facility. However, Fleetwood brings

up the issue of the exclusion of this evidence for the first time on appeal. Because Fleetwood did not complain in its motion for rehearing about the ALJ's exclusion of this evidence, it did not preserve the issue for review. To preserve error, the motion must set forth (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency that the complaining party asserts was error, and (2) the legal basis upon which the claim of error rests. *Central Power & Light Co./Cities of Alice v. Public Util. Comm'n of Tex.*, 36 S.W.3d 547, 569 (Tex.App.-Austin 2000, pet. denied); *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex.App.-Austin 1987, writ ref'd n.r.e.). Fleetwood did not allege that evidence was erroneously excluded in its motion for rehearing. It has thus not preserved the issue for our review.

■■■■■ Fleetwood claims that the ALJ failed to make findings or conclusions reflecting considerable evidence favorable to Fleetwood that would have proved it had removed the immediate and serious threat. In other words, the ALJ did not make the findings or conclusions that Fleetwood sought, and now Fleetwood asks this Court to review the record and remand the case so that findings and conclusions favorable to Fleetwood will be made. Such an action is not in the province of this Court, which must defer to the ALJ's findings and conclusions if there is some reasonable basis in the record to support them. *See Charter Med.*, 665 S.W.2d at 452. The test is not whether the agency reached the correct conclusion, but whether the evidence in support of its conclusion is substantial. *Id.* We may not substitute our judgment for that of the ALJ regarding the weight of the evidence. *Id.* Here, the record contains substantial evidence to support the ALJ's findings and conclusions regarding immediate and serious threat. Even if the

evidence that Fleetwood claims was not acknowledged in any findings or conclusions preponderates against the Department's determination of immediate and serious threat, we cannot say that the record lacks substantial evidence to support the Department's conclusion.

■■■■■ Fleetwood asserts that the Department's surveyors repeatedly testified that they did not have complete information regarding resident injuries and failed to review facility charts and records prior to making their determinations of immediate and serious threat. In one instance, a surveyor noticed an unexplained bruise on a resident during the resurvey in early November. Although the presence of the bruise and the facility nurse's lack of knowledge of the bruise were factors that led the surveyor to determine that there was still an immediate and serious threat present, the surveyor failed to look at the resident's chart, which revealed that the resident had been out of the facility for several days until the night before the resurvey. Fleetwood asserts that the ALJ erred by not making a finding or conclusion reflecting such mitigating testimony. However, the evidence of the injury itself is substantial evidence to support the findings and conclusions that the ALJ did make; the ALJ need not have weighed the evidence according to Fleetwood's urging. Indeed, the ALJ's omission of findings and conclusions reflecting possible mitigating circumstances goes to his fact-finding role, and we cannot overturn his conclusions if there is substantial evidence to support them. The evidence in the record of resident injuries, untrained staff, and failure to provide adequate and appropriate nursing services amounts to substantial evidence despite evidence offered by Fleetwood of measures it took to remediate. We overrule Fleetwood's issue asserting lack of substantial evidence.

### Arbitrary and capricious review

Fleetwood argues that the Department's termination of its Medicaid certification was arbitrary, capricious, and an abuse of discretion. Generally, an administrative decision is not arbitrary and capricious if it is supported by substantial evidence. *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex.1966); *Texas Health Enters. v. Texas Dep't of Health,* 954 S.W.2d 168, 173 (Tex.App.-Austin 1997, no pet.). However, Fleetwood cites several cases requiring appellate courts to otherwise set aside administrative actions taken in contravention of due process rights. *See Lewis v. Metro. Sav. & Loan Ass'n,* 550 S.W.2d 11 (Tex. 1977); *Park Haven, Inc. v. Texas Dep't of Human Servs.,* 80 S.W.3d 211 (Tex.App.-Austin 2002, no pet.); *Starr County v. Starr Indus. Servs.,* 584 S.W.2d 352 (Tex. Civ.App.-Austin 1979, writ ref'd n.r.e.). We find these cases inapposite here and refuse to extend their holdings. *Lewis* dealt exclusively with an ALJ's rulings excluding competent and relevant evidence offered by the appellant. *See Lewis,* 550 S.W.2d at 12. The Court held that the ALJ had erred in excluding the evidence and that an administrative order can be invalid for arbitrariness when a contesting party is denied due process of law in the conduct of the administrative hearing. *Id.* at 15–16. As already discussed, Fleetwood did not preserve its error relating to exclusion of evidence by the ALJ.

*Park Haven* concerned the question of whether there was substantial evidence to support an ALJ's finding that the Department had considered the threshold, mandatory statutory criterion of a nursing home's compliance history in finding that its deficiencies posed a serious threat to resident health and safety. *See Park Haven,* 80 S.W.3d at 213. Noting that the ALJ had excluded evidence precisely on the point of the home's compliance history,

this Court determined that the record contained no evidence going to the home's compliance history other than a generalized description of what usually happens in the assessment process. *Id.* at 215. We held that the ALJ's order was thus arbitrary, capricious, and not supported by substantial evidence. *Id.* Here, the record contains evidence pertaining to whether Fleetwood's deficiencies amounted to an immediate and serious threat, specifically testimony regarding staff training, resident injuries, and nursing services.

In *Starr County,* this Court examined two questionable actions taken by the Texas Water Quality Board with respect to a permit applicant: (1) lack of providing notice to the applicant of additional requirements it had to meet and (2) consideration of a non-statutory standard in its decision to deny the application. *See Starr County,* 584 S.W.2d at 356. Citing *Lewis* for the proposition that an agency order may be supported by substantial evidence and yet be invalid for arbitrariness, we affirmed the district court's judgment vacating the order. *Id.* at 355–56. There, we noted that the major factor running through arbitrary-capricious review cases is that parties must be able to know what is expected of them in the administrative process. *Id.* at 356. For instance, when an agency has been subjected to pressure from congressional sources in issuing an order, the order may be invalid for arbitrariness or capriciousness. *Id.; see Texas Med. Ass'n v. Mathews,* 408 F.Supp. 303, 306 (W.D.Tex.1976) (setting aside agency order because the agency had been subjected to pressures from congressional sources). Fleetwood has not asserted any errors committed by the ALJ or the Department that rise to the level of denying it notice of the administrative process or constituting arbitrary action.

An agency abuses its discretion in reaching a decision if it omits from its consideration factors that the legislature intended the agency to consider, includes in its consideration irrelevant factors, or reaches a completely unreasonable result after weighing only relevant factors. *Texas Health Enters.*, 954 S.W.2d at 173 (citing *Statewide Convoy Transps., Inc. v. Railroad Comm'n of Tex.*, 753 S.W.2d 800, 804 (Tex.App.-Austin 1988, no writ)). This Court must presume that the order is valid, and the burden of proving otherwise is on the appellant. *Id.* Fleetwood does not argue that the ALJ or the Department failed to consider relevant, legislative factors or considered irrelevant factors in reaching its decision. Furthermore, we have determined in our substantial evidence review that the Department's result was not completely unreasonable. We thus overrule Fleetwood's issue with respect to arbitrariness, capriciousness, and abuse of discretion.

## CONCLUSION

The Department's decision was supported by substantial evidence and was not an abuse of discretion. We affirm the district court's judgment affirming the Department's order that terminated Fleetwood's Medicaid certification for the ten-day period.